UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

K-tel International (USA), Inc.,

Plaintiff,

v.

Trans World Entertainment Corporation,

Defendant.

Civil No. 00-2714 (RHK/JMM)
**MEMORANDUM OPINION AND ORDER**

---

Paul C. Thissen, Briggs and Morgan, P.A., Minneapolis, Minnesota, for Plaintiff.

Thomas E. Propson, and Susan K. Fitzke, Meagher & Geer, P.L.L.P., Minneapolis, Minnesota, for Defendant.

---

**Introduction**

Plaintiff K-tel International (USA), Inc. ("K-tel") distributes recorded music to music retailers. Defendant Trans World Entertainment Corporation ("Trans World") is a large music retailer. On December 15, 2000, K-tel filed suit in this Court alleging that Trans World owes K-tel approximately $1.5 million for cassettes and compact discs that were delivered to Trans World.. K-tel also alleged that Trans World has (a) breached its duty of good faith and fair dealing to K-tel, (b) converted cassettes and compact discs in which K-tel claims to have a purchase money security interest; (c) tortiously interfered with K-tel's contractual relations with record production companies; (d) tortiously



FILED FEB 0 2 2001
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD
DEPUTY CLERK

interfered with K-tel's prospective business relationships with record production companies and others in the industry; and (e) disparaged K-tel's business. K-tel also claims that Trans World will be unjustly enriched at K-tel's expense if it is allowed to keep the cassettes and CDs shipped to it without payment.

Before the Court is K-tel's motion for partial summary judgment on Count I of the Complaint, alleging a breach of contract due to Trans World's failure to pay K-tel pursuant to the payment term on K-tel's invoices. For the reasons set forth below, the Court will deny K-tel's motion for partial summary judgment.[1]

**Background**

K-tel is a developer, marketer, and distributor of music and entertainment products, marketing its product lines both on the Internet and to retailers, wholesalers, distributors and licensees around the world. (Jan. 12, 2001, Propson Decl. Ex. D. (Business Wire, K-tel International Reports First Quarter Fiscal 2001 Results (Nov. 14, 2000).) Trans World operates nearly one thousand retail music stores in forty-six states, the District of Columbia, Puerto Rico, and the U.S. Virgin Islands. (Jan. 12, 2001, O'Brien Decl. ¶ 2.)

---

[1]Trans World has moved for dismissal of several counts of the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Specifically, Trans World moves to dismiss the claims for breach of the duty of good faith and fair dealing (Count II), tortious interference with contractual relations (Count V), and disparagement (Count VII). Trans World also moves to strike paragraphs eight and nine of the Complaint on the grounds that they contain inadmissible evidence of settlement negotiations. Trans World's motion will be addressed in a separate Memorandum Opinion and Order.

Trans World began buying CDs and cassettes from K-tel in approximately 1993. (Id. ¶ 3.) Trans World customarily submitted orders to K-tel on purchase order forms printed by Trans World. (Id. ¶¶ 3 and 7 and Ex. A.) The purchase order form contains several terms and conditions, including the following:

> *****
>
> 6. In the event of Franchise Cancellation or Discontinuance of an on going purchasing relationship, any or all products shall be returnable at the Buyer's option for full invoice reimbursement from the seller in cash.
>
> 7. Product return credits, handling and shipping credits, price discrepancies, express mail charges as requested by the Seller, and advertising credits are deducted from the next remittance due the seller, after said credits are incurred, compiled or scheduled. These credits are to be used to reduce the outstanding account balance due the Seller. If the credits are greater than the account balance, leaving a credit balance, that credit balance is payable in cash within 10 days from notification by Trans World Entertainment Corp.
>
> *****
>
> 12. All invoices rendered are subject to a minimum 2% cash discount.

(Id. Ex. A.) Upon receiving an order from Trans World, K-tel would ship product to Trans World together with an invoice. K-tel's invoice contained several terms and conditions, including a payment term.[2]

---

[2] The parties dispute whether the payment term was "2% 45/ net 90." (Jan. 12, 2001, O'Brien Decl. ¶ 4 and Ex. B (Nov. 19, 1999 Invoice from K-tel to Trans World)), or "2 % 45/ net 60." (Second Onstad Aff. Ex. 2; see also Jan. 12, 2001, O'Brien Decl. Ex. C (Sept. 22, 2000 letter from Jerry Kamiler to A. Merrill Ayers).) Because all of the invoices at issue in the breach of contract action are more than ninety days old, that dispute is not material.

In early 1997, Trans World began to incorporate a "leverage discount" from the vendors from whom it purchased merchandise – including K-tel. Under the "leverage discount" Trans World would reduce its payment to K-tel by fifty percent of the value of the unsold K-tel inventory it had on hand when the invoice to K-tel came due. (Jan. 12, 2001, O'Brien Decl. ¶ 12.) Trans World alleges that it first took "leverage discounts" on amounts owed to K-tel in June of 1997. (Id. ¶ 13.) Trans World contends that when its "leverage discount" began to equal or exceed the amount otherwise owed to K-tel on invoices as they came due, Trans World began to pay one dollar on each invoice within forty-five days of the date of the invoice in order to preserve its 2% discount. (Id. ¶ 15.) By September 19, 2000, K-tel had indicated that it would not agree to Trans World's "leverage discount." (Id. Ex. C (Sept. 22, 2000 letter from Jerry Kamiler to A. Merrill Ayers).)

Last September, Trans World's divisional merchandise manager for music informed K-tel's chief financial officer that K-tel's payment terms of "2% 45/net 60" were unacceptable to Trans World. (Id.) Trans World stated it would therefore cease ordering any additional products from K-tel. (Id.) Trans World also stated that it would be sending product recalls to its stores in January of 2001:

> It will take about 60 to 90 days for our Distribution Centers to sort through all of the returns, create RARs which will be requested from you, and once those RARs have been returned to us we will return our merchandise to you and satisfy our indebtedness.

(Id.)

On October 3, 2000, K-tel responded that it would proceed with the merchandise return procedures Trans World had described. (Jan. 12, 2001, O'Brien Decl. Ex. D (Oct. 3, 2000 letter from A. Merrill Ayers to Jerry Kamiler).) K-tel asserted, however, that such procedures would not satisfy Trans World's indebtedness to K-tel.[3]

Trans World no longer purchases K-tel's CDs and cassettes directly from K-tel. Trans World represents that it is in the process of recalling its K-tel inventory from the stores it operates around the country and that the recall should be completed by March of 2001. (Jan. 12, 2001, O'Brien Decl. ¶¶ 5, 20.) Trans World further claims that it has $1,425,773.95 in K-tel inventory to return. (Jan. 12, 2001, O'Brien Decl. ¶ 21 & Ex. E.)

## Analysis

### I. Plaintiff's Motion for Summary Judgment

#### A. Standard of Decision

Summary judgment is proper only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). The moving party bears the burden of showing that the material facts in the case are undisputed. See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); Mems v. City of St. Paul, Dep't of Fire & Safety Servs., 224 F.3d 735, 738 (8th

---

[3] K-tel claimed that Trans World would be over ninety days past due on $1,011,436 in invoices by October 15, 2000 and over ninety days past due on an additional $425,761 by October 20, 2000. (Id.)

Cir. 2000). The court must view the evidence, and the inferences which may be reasonably drawn from it, in the light most favorable to the nonmoving party -- in this case, the defendant, Trans World. See Graves v. Arkansas Dep't of Fin. & Admin., 229 F.3d 721, 723 (8th Cir. 2000); Calvit v. Minneapolis Pub. Schs., 122 F.3d 1112, 1116 (8th Cir. 1997). The nonmoving party may not rest on mere allegations or denials, but rather must demonstrate the existence of specific facts that create a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S. Ct. 2505, 2514 (1986); Krenik v. County of Le Sueuer, 47 F.3d 953, 957 (8th Cir. 1995).

The nonmovant, however, cannot avoid summary judgment in favor of the movant merely by pointing to some alleged factual dispute between the parties. Instead, any fact alleged to be in dispute must be "outcome determinative under prevailing law," that is, it must be material to an essential element of the specific theory of recovery at issue. See Dancy v. Hyster Co., 127 F.3d 649, 652 (8th Cir. 1997); Get Away Club, Inc. v. Coleman, 969 F.2d 664, 666 (8th Cir. 1992). The court does not weigh facts or evaluate the credibility of affidavits and other evidence on a motion for summary judgment. See Liberty Lobby, 477 U.S. at 249, 106 S. Ct. at 2511.

In its memorandum, K-tel identifies the following four issues on which it seeks aa determination as a matter of law:

1. Whether Trans World is entitled to take a deduction based on the amount of K-tel inventory it has on hand;

2. Whether Trans World is entitled to take a 2% discount on the balance it owes on the invoices from K-tel where Trans World has paid only one dollar within forty-five days of the date of the invoice;

3. Whether Trans World owes K-tel immediate payment of $1,599,789 for amounts due on invoices more than 90 days old; and

4. Whether Trans World owes K-tel $132,556 for amounts Trans World deducted as 2% discounts on invoice amounts paid after forty-five days.

(Pl.'s Mem. Supp. Mot. Summ. J. at 2.) For the reasons set forth below, K-tel is not entitled to the entry of judgment on its breach of contract claim.

**B. K-tel's Breach of Contract Claim**

K-tel's sale of CDs and cassettes to Trans World is a transaction for the sale of goods and therefore governed by Article 2 of the Uniform Commercial Code. Minn. Stat. § 336.2-102. "The tender of delivery of goods is a condition to the buyer's duty to accept the goods and, unless otherwise agreed, to the buyer's duty to pay." Minn. Stat. § 336.2-507 (emphasis added). K-tel argues that, because it tendered the goods for delivery and those goods were accepted, it is entitled to payment according to the terms of its invoice. The transaction is not as simple as K-tel would like, however, and the contract between the parties is not clearly confined to K-tel's invoices.

Trans World has come forward with evidence that it initiated orders from K-tel by sending purchase order forms prior to receiving the invoices from K-tel. Those purchase order forms contain terms that Trans World argues affect K-tel's right to payment. Thus,

the K-tel invoice is not the only written expression of the parties' agreement. See Minn. Stat. § 336.2-207(3). Trans World's purchase order -- which provides that "[a]ll invoices rendered are subject to a minimum 2% cash discount" -- differs from K-tel's payment term of "2% 45," thus raising a genuine issue as to whether Trans World is entitled to take a two percent deduction on invoices paid after forty-five days. Similarly, the provision of the purchase order authorizing Trans World to return merchandise at the end of the purchasing relationship raises a genuine issue as to whether, pending the return of the remainder of K-tel's merchandise, K-tel is entitled to immediate payment.[4]

Furthermore, K-tel has not adequately responded to Trans World's argument regarding the provision in the purchase order allowing Trans World to offset "scheduled" product return credits against invoices that are due. Trans World contends it has always maintained and exercised the right to return unsold CDs, cassettes, or other K-tel merchandise to K-tel for cash or full invoice credit. (Id. ¶ 3.) Trans World further contends that it

> [has] always maintained the related right to offset amounts owed by K-tel for merchandise scheduled for return against accounts payable to K-tel, as well as the absolute right (pursuant to the terms of our purchase order) to offset amounts scheduled for return to K-tel against amounts owed K-tel at

[4] K-tel argues that Trans World's contention that it can suspend payment pending a return of product is contrary to the parties course of dealing and industry practice. (Second Onstad Aff. ¶ 6.) Trans World responds that the parties have never before terminated their purchasing relationship (hence, no course of dealing), and that the practice in the industry when a purchasing relationship is discontinued is in fact exactly what Trans World is doing. (Jan. 24, 2001, O'Brien Decl. ¶ 4, 5.)

> the conclusion of our relationship and return merchandise in excess of amounts owed K-tel for cash.

(Id.) Thus, Trans World alleges, before this lawsuit, it had consistently returned merchandise to K-tel for cash and had offset amounts scheduled for return against amounts otherwise payable to K-tel -- all without objection from K-tel. (Id.)[5] Accordingly, this Court cannot say, as a matter of law, that Trans World does not have "scheduled" product return credits that reduce K-tel's right to payment.

Trans World has further come forward with evidence, viewed in the light most favorable to the non-moving party, that tends to show that the parties modified their agreement regarding payment through a course of actual performance by which Trans World had been taking a "leverage deduction" based on the amount of K-tel inventory in stock. See Minn. Stat. § 336.2-208(3) ("Subject to the provisions of [2-209], such course of performance shall be relevant to show a waiver or modification of any term inconsistent with such course of performance"). To the extent Trans World asserts that it has K-tel product in inventory, the Court concludes that genuine issues of material fact remain as to whether Trans World is currently entitled to take a "leverage discount" on

---

[5] K-tel asserts that a retailer must obtain K-tel's authorization before returning any K-tel product. (See Amann Aff. ¶ 2.) Furthermore, Trans World asserts that whether a product return credit is "incurred, compiled or scheduled" is not dependent upon whether K-tel issues a credit memo. (Jan. 24, 2001, O'Brien Decl. ¶ 2.) Indeed, Trans World claims that it has used "product return credits" to reduce the outstanding account balance due to K-tel before K-tel has issued credit memos. (Id.) Thus, the timing of the deduction is not subject to vendor approval. (Id. at ¶ 3.)

the invoices payable to K-tel and, if so, how much that discount should be.

## Conclusion

K-tel has not met it burden of showing that all of the facts material to its breach of contract claim are undisputed, such that it is entitled to judgment as a matter of law. Based on the foregoing, and all of the files, records and proceedings herein, **IT IS ORDERED THAT** Plaintiff K-tel International (USA), Inc.'s Motion for Partial Summary Judgment (Doc. No. 10) is **DENIED**.

Dated: February 2, 2001

RICHARD H. KYLE
United States District Judge