**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

K-tel International (USA), Inc.,

Plaintiff,

v.

Civil No. 00-2714 (RHK/JMM)
**MEMORANDUM OPINION AND ORDER**

Trans World Entertainment Corporation,

Defendant.

---

Paul C. Thissen, Briggs and Morgan, P.A., Minneapolis, Minnesota, for Plaintiff.

Thomas E. Propson, and Susan K. Fitzke, Meagher & Geer, P.L.L.P., Minneapolis, Minnesota, for Defendant.

---

**Introduction**

Plaintiff K-tel International (USA), Inc. ("K-tel") distributes recorded music to music retailers. Defendant Trans World Entertainment Corporation ("Trans World") is a large music retailer. On December 15, 2000, K-tel filed suit, alleging that Trans World owes K-tel approximately $1.5 million for cassettes and compact discs that had been delivered to Trans World. K-tel also alleges, inter alia, that Trans World has (a) breached its duty of good faith and fair dealing to K-tel, (b) converted cassettes and compact discs in which K-tel claims to have a purchase money security interest; (c) tortiously interfered with K-tel's contractual relations with record production companies; (d) tortiously



FILED FEB 16 2001
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD
DEPUTY CLERK

interfered with K-tel's prospective business relationships with record production companies and others in the industry; and (e) disparaged K-tel's business.

Before the Court is Trans World's motion to dismiss several of K-tel's claims for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Specifically, Trans World moves to dismiss K-tel's claims for breach of the implied covenant of good faith and fair dealing (Count II), tortious interference (Counts V and VI), and disparagement (Count VII).[1] Trans World also moves to strike certain paragraphs of the Complaint as containing inadmissible evidence of settlement negotiations.

In opposition to Trans World's motion, K-tel filed a motion seeking leave to amend its Complaint. In a telephone conference with the undersigned, counsel for the parties acknowledged that K-tel was entitled to amend its complaint as a matter of course, without leave of the Court, pursuant to Rule 15(a) because Trans World had not yet filed a pleading responsive to the Complaint.[2] Trans World has asked the court to determine

---

[1] Trans World's motion only requests that Count V, alleging tortious interference with contractual relations, be dismissed. Both parties, however, have briefed whether the dismissal of Count VI, alleging tortious interference with prospective business relations, is proper. Accordingly, the Court will consider both tortious interference counts together.

[2] Rule 15(a) provides that a party may amend his or her pleading "once as a matter of course at any time before a responsive pleading is served . . . ." Fed. R. Civ. P. 15(a). A motion to dismiss for failure to state a claim, brought pursuant to Rule 12(b)(6) is not a "responsive pleading" for purposes of Rule 15(a). Camp v. Gregory, 67 F.3d 1286, 1289 (7th Cir. 1995); Lockhart v. Cedar Rapids Community Sch. Dist., 963 F. Supp. 805, 810 (N.D. Iowa, 1997).

that the amendments to the Complaint would be futile. The Court deemed the complaint amended as a matter of course and stated that it would deny as moot K-tel's motion to amend the complaint and would evaluate Trans World's arguments regarding the sufficiency of the claims in the context of the Amended Complaint.[3] For the reasons set forth below, the Court will grant in part Trans World's motion to dismiss.

**Background**

K-tel is a record distribution company that enters into distribution agreements with record production companies. (Amended Compl. ¶ 4.) K-tel purchases CDs and cassettes from the record production companies and sells them to music retailers. (Id.) Trans World is a music retailer to whom K-tel has sold CDs and cassettes for several years. (Id. ¶ 5.)

K-tel claims that Trans World owes it over $1.5 million for products that it has delivered to Trans World. (Id. ¶ 7.) K-tel asserts that its invoices entitled Trans World to a 2% discount on those amounts paid within 45 days of the date of the invoice. (Id. ¶¶ 5, 6.) K-tel complains that Trans World has paid a single dollar on each invoice within the 45 days and is claiming it is entitled to take a 2% discount on the remaining balance due, despite the fact that the balance due will be paid more than 45 days after the date of the invoice. (Id. ¶ 6.) K-tel also complains that Trans World has "attempted to intimidate K-

---

[3] In its Amended Complaint, K-tel no longer asserts a claim for "unfair competition." Accordingly, that portion of Trans World's motion seeking dismissal of the "unfair competition" count is moot.

tel into accepting onerous and unreasonable new terms and conditions." (Id. ¶ 8.) For example, K-tel alleges that Trans World "unilaterally imposed an unauthorized 'leverage deduction' under which Trans World purported to be able to withhold from payment an amount equal to 50% of the value of its K-tel inventory." (Id.) K-tel further asserts that Trans World has actually withheld more than 50% of the inventory's value. (Id. ¶ 9.)

K-tel also alleges that Trans World has made "false and unjustified comments to record production companies for which K-tel acts as a distributor pursuant to distribution agreements." (Id. ¶ 10.) Specifically, K-tel claims that Trans World told these record production companies that K-tel had "unilaterally decided to stop selling records to Trans World." (Id.) As a result of these comments, K-tel asserts, the record production companies have threatened to terminate or have already terminated distribution agreements with K-tel, and that K-tel's reputation in the industry has been damaged. (Id.)

## Analysis

### I. Standard of Decision

In considering a motion to dismiss for failure to state a claim upon which relief may be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must take as true the allegations contained in the complaint. Cooper v. Pate, 378 U.S. 546, 546 (1964) (per curiam). A complaint

> must be viewed in the light most favorable to the plaintiff and should not be dismissed merely because the court doubts that a plaintiff will be able to prove all of the necessary factual allegations. "Thus, as a practical matter, a

> dismissal under Rule 12(b)(6) is likely to be granted only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief."

Fusco v. Xerox Corp., 676 F.2d 332, 334 (8th Cir. 1982) (quoting Jackson Sawmill Co. v. United States, 580 F.2d 302, 306 (8th Cir. 1978)). Viewing the complaint in this manner, the court may dismiss a case under Rule 12(b)(6) only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations made in the complaint. Hishon v. King & Spalding, 467 U.S. 67, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

## II. K-tel's Breach of the Covenant of Good Faith and Fair Dealing Claim

Trans World characterizes K-tel's claim as involving allegations that (1) Trans World "purposefully" breached the contract without justification; and (2) Trans World "maliciously" has tried to "intimidate and coerce K-tel into accepting new and onerous terms and conditions" to the contract. Trans World argues that these allegations do not fall within the parameters recognized under Minnesota law of a claim for breach of the implied covenant.[4]

---

[4] Minnesota courts permit a breach of implied covenant claim where the defendant has affirmatively blocked the happening of a condition precedent and then tried to take advantage of the failure of that condition in order to avoid performance. See In re Hennepin County 1986 Recycling Bond Litig., 540 N.W.2d 494, 502-03 (Minn. 1995) (citing cases). Furthermore, this Court has predicted that the Minnesota courts would permit a breach of implied covenant claim in order to save a contract from being held illusory under circumstances in which the defendant has an unlimited discretionary power over a term of the contract. See White Stone Partners, L.P. v. Piper Jaffray Cos., 978 F. Supp. 878, 882 (D. Minn. 1997) (Tunheim, J.).

The contract between the parties here is one for the sale of goods. Therefore, Article 2 of the Uniform Commercial Code ("U.C.C."), codified in Minnesota at Minn. Stat. § 336.2-101 et seq., governs its construction and interpretation. Every contract or duty within the U.C.C. "imposes an obligation of good faith in its performance or enforcement."[5] Minn. Stat. § 336.1-203; see Minn. Stat. § 336.2-103(4) (incorporating the principles of Article 1 of the U.C.C. into Article 2). K-tel makes two factual allegations regarding Trans World's performance under the sales contracts. The first involves Trans World's payment of one dollar on each invoice within 45 days of the invoice date and the assertion that it is entitled to take a 2% discount on the remaining invoice balance. (Amended Compl. ¶ 6.) The second involves Trans World's actions in "unilaterally impos[ing] an unauthorized 'leverage deduction' under which Trans World purport[s] to be able to withhold from payment an amount equal to 50% of the value of its K-tel inventory." (Amended Compl. ¶ 8.) Neither of these issues regarding K-tel's performance can support a claim for breach of the implied covenant in light of the other allegations in the Amended Complaint.

Minnesota law does not recognize an independent action for breach of the implied

[5] For purposes of the sales transactions governed by Article 2, "good faith" means "in the case of a merchant . . . honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade." Minn. Stat. § 336.2-103(1)(b). A "merchant" is defined as "a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction . . . ." Minn. Stat. § 336.2-104(1).

covenant where that action arises from the same conduct that underlies a breach of contract claim. See Sports & Travel Marketing, Inc. v. Chicago Cutlery Co., 811 F. Supp. 1372, 1383 (D. Minn. 1993) (Doty, J.). K-tel here alleges that Trans World breached its sales contract by failing to pay for the goods sold pursuant to the "2% 45/ net 60" payment term of the invoices. Therefore, K-tel's assertion that Trans World has misconstrued or abused the two percent discount term is a part of the conduct that underlies the breach of contract claim. Similarly, K-tel's assertion that Trans World has unilaterally established and taken a "leverage deduction" cannot be divorced from the claim that Trans World has failed to comply with the payment term of the sales contracts.

Nor can K-tel's more general assertion that Trans World has "attempted to intimidate K-tel into accepting onerous and unreasonable new terms and conditions" (Amended Compl. ¶8) support a claim for breach of the implied covenant. The implied covenant of good faith and fair dealing extends only to actions within the scope of the underlying contract. White Stone Partnership, L.P. v. Piper Jaffray Cos., 978 F. Supp. 878, 881 (D. Minn. 1997) (Tunheim, J.). The re-negotiation of contract terms is necessarily outside the scope of the performance of the existing contract. Accordingly, that allegation cannot support a clam for breach of the implied covenant. The Court will grant Trans World's motion with respect to Count II of the Amended Complaint.

## III. K-tel's Claims for Tortious Interference

K-tel asserts that Trans World wrongfully interfered with (1) K-tel's existing

contractual relationships with record production companies (Amended Compl. ¶ 25), and (2) K-tel's prospective business relationships with record production companies and "others in the industry" (id. ¶ 28). K-tel's claim is based upon the allegation that Trans World told record companies with which K-tel had distribution agreements that K-tel had unilaterally terminated its business relationship with Trans World. (Id. ¶ 10.)

A cause of action for tortious interference with contract requires establishment of the following five essential elements: (1) a contract exists; (2) the defendant knew of the contract; (3) the defendant intentionally procured the breach of that contract; (4) the defendant lacked justification for its actions; and (5) the plaintiff was damaged as a result. See Kallok v. Medtronic, Inc., 573 N.W.2d 356, 362 (Minn. 1998); Furlev Sales & Assoc., Inc. v. North Am. Auto. Warehouse., Inc., 325 N.W.2d 20, 25 (Minn.1982). With respect to the defendant's knowledge of the contract, "[i]t is enough if the defendant had knowledge of facts which, if followed by reasonable inquiry, would have led to complete disclosure of the contractual relations and rights of the parties." Kjesbo v. Ricks, 517 N.W.2d 585, 588 n.3 (Minn. 1994). With respect to a claim for tortious interference with prospective business relations, Minnesota courts have adopted the formulation set forth in section 766B of the Restatement (Second) of Torts. United Wild Rice, Inc. v. Nelson, 313 N.W.2d 628, 632-33 (Minn.1982). Section 766B provides that

> One who intentionally and improperly interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the

relations, whether the interference consists of

(a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or

(b) preventing the other from acquiring or continuing the prospective relation.

Restatement (Second) of Torts § 766B (1977).

Trans World argues that the tortious interference claims fail to state a claim upon which relief can be granted because K-tel has not alleged that Trans World was aware of the existence of the contracts and that the alleged interference was without justification. As to the first issue, K-tel has amended its Complaint to contain the allegation, upon information and belief, that Trans World knew about K-tel's current and prospective contractual relationships with the record production companies. (Amended Compl. ¶ 10.) Furthermore, given the standard for knowledge stated in Kjesbo, the Court cannot conclude as a matter of law that there is no set of facts by which K-tel could satisfy the knowledge element of the claim. As to justification, the Court notes that K-tel's Amended Complaint alleges that "Trans World falsely and unjustifiably stated that K-tel had unilaterally decided to stop selling records to Trans World." (Amended Compl. ¶ 10 (emphasis added).) The Court concludes that, on their face, the claims for tortious interference are sufficient to state a claim upon which relief may be granted. The Court will deny Trans World's motion with respect to the tortious interference claims.

## IV. K-tel's Disparagement Claim

K-tel asserts a claim of business disparagement under both the common law and Minn. Stat. § 325D.44, subd. 1(8), which are essentially the same. See Amerinet, Inc. v. Xerox Corp., 972 F.2d 1483, 1502 (8th Cir. 1992). K-tel's claim is again based on the allegation that Trans World told record companies with which K-tel had distribution agreements that K-tel had unilaterally terminated its business relationship with Trans World. K-tel claims that the statements were false, injured its business reputation, and caused K-tel harm.

"A person engages in a deceptive trade practice when, in the course of business, vocation, or occupation, the person . . . disparages the goods, services, or business of another by false or misleading representation of fact . . . .Minn. Stat. § 325D.44, subd. 1(8). The plaintiff bears the burden of proving that the statement complained of is "provably false." McClure v. American Family Mut. Ins. Co., 223 F.3d 845, 853, 855 (8th Cir. 2000); United Wild Rice, Inc. v. Nelson, 313 N.W.2d 628, 635 (Minn. 1982). The four factors Minnesota courts consider in addressing whether the complained-of statement can be interpreted as stating facts or can be proven false are (1) the specificity and precision of the statement; (2) the verifiability of the statement; (3) the literary and social context in which the statement was made; and (4) the public context. McClure, 223 F.3d at 853 (citing Geraci v. Eckankar, 526 N.W.2d 391, 397 (Minn. Ct. App. 1995)).

Trans World contends that there is no set of facts by which K-tel can establish that

the statement complained of in this case is "provably false" under the standard stated in McClure. In McClure, the allegedly disparaging statements were made by the defendant insurance company about the plaintiffs, who were former agents of the company. The plaintiffs were terminated for conduct "prejudicial to the company," having lobbied the Minnesota legislature for a law prohibiting insurance companies from imposing quotas on agents that would require the agents to sell a certain number or dollar value of life and health insurance policies before being permitted to sell more profitable policies for property and casualty insurance.

The communications that were challenged as "defamatory" were to the effect that the former agents

> had engaged in "disloyal and disruptive activity" and "conduct unacceptable by any business standard," that they did not understand the "value of loyalty and keeping promises," were "acting against the best interests of the insurance buying public," "were falsely claiming they initiated the legislation because they were fighting sales 'quotas'," and "were in direct violation of their agreements" . . . .

McClure, 223 F.3d at 853. The Eighth Circuit concluded that these statements were "not sufficiently precise or verifiable to support a claim of defamation" based on the following reasoning:

> A commentator who advocates one of several feasible interpretations of some event is not liable in defamation simply because other interpretations exist. Consequently, remarks on a subject lending itself to multiple interpretations cannot be the basis of a successful defamation action because as a matter of law no threshold showing of falsity is possible in such circumstances.

Id. (quoting Hunter v. Hartman, 545 N.W.2d 699,707 (Minn. Ct. App. 1996)). Trans World argues that the complained-of statement here is merely a "characterization" of the contractual relationship between K-tel and Trans World and is therefore not actionable.

The Court disagrees. Either K-tel unilaterally -- i.e., without Trans World's involvement or consent -- decided to stop selling CDs and cassettes to Trans World, or it did not. That is a statement of fact, not of interpretation, characterization, or opinion. The Court concludes that Trans World's alleged statement is not so imprecise or "non-verifiable" as to be legally deficient.

Trans World also contends that the complained-of statement does not relate directly to K-tel's "business, services, or goods." Again, the Court disagrees. As a music distributor, CDs and cassettes flow through K-tel from producers to retailers. A statement indicating that K-tel has severed its business relationship with a major national music retailer certainly relates to K-tel's business of channeling recordings from producers to the retail market. Finally, the Court cannot conclude, as a matter of law, that K-tel is unable to show that Trans World's comment carried a negative implication regarding K-tel's competence and effectiveness as a music distributor. Accordingly, the Court will deny the motion to dismiss with respect to the defamation claim.

**V. Trans World's Motion to Strike Paragraphs 8 and 9.**

Trans World moves to strike paragraphs 8 and 9 of the Complaint on the grounds that they contain references to statements made during settlement negotiations between

K-tel and Trans World. Trans World asserts that those statements are inadmissible pursuant to Rule 408 of the Federal Rules of Evidence, and therefore should be stricken.

These two paragraphs relate to Trans World's purported "leverage deduction." Trans World has put documents into evidence in opposition to K-tel's motion for summary judgment that tend to show that the "leverage deduction," far from being a topic of discussion during settlement negotiations, was a part of Trans World's regular business practices since approximately 1997. The Court will deny the motion to strike.

## Conclusion

Based on the foregoing, and all of the files, records and proceedings herein, **IT IS ORDERED THAT**

1. Plaintiff K-tel Corporation's Motion to Amend Complaint (Doc. No. 16) is **DENIED AS MOOT;** K-tel does not require leave of the Court to amend the Complaint because no responsive pleading has been filed;

2. The Amended Complaint is deemed to have been served. Counsel for the Plaintiff is directed to file the same with the Clerk of Court forthwith, and the Defendant shall file an Answer to the Amended Complaint in accordance with Rule 12; and

3. Defendant Trans World Entertainment's Motion to Dismiss and to Strike Allegations in the Complaint (Doc. No. 13) is **GRANTED IN PART**; Count II of the Amended Complaint is **DISMISSED WITH PREJUDICE**.

Dated: February 16, 2001

RICHARD H. KYLE
United States District Judge