UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

K-TEL INTERNATIONAL (USA), INC.,

Plaintiff,

v.

TRANS WORLD ENTERTAINMENT CORPORATION,

Defendant.

CIVIL NO. 00-2714 (RHK/JMM)

ORDER

The above matter came on for hearing before the undersigned on July 23, 2001 upon the Motion of K-5 Leisure Products, Inc. to Intervene. [Docket Nos. 49, 55]. Patrick C. Summers, Esq. appeared on behalf of Plaintiff; Thomas Edmund Propson, Esq. appeared on behalf of Defendant; Larry B. Ricke, Esq. appeared on behalf of K-5 Leisure Products, Inc.

The Court, being duly advised in the premises, upon all of the files, records and proceedings herein, now makes and enters the following Order.

IT IS HEREBY ORDERED that the Motion of K-5 Leisure Products, Inc. to Intervene [Docket Nos. 49, 55] is denied.

Dated: August 29, 2001

JOHN M. MASON
United States Magistrate Judge

FILED AUG 29 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

**MEMORANDUM**

The underlying dispute in this action involves payments allegedly due Plaintiff for the sale of music CD's and cassettes to Defendant. K-5 Leisure Products, Inc. ("K-5") is a secured creditor of Plaintiff. According to K-5, the money claimed by Plaintiff in this action is an account receivable subject to K-5's security interest.

After starting this lawsuit, Plaintiff filed for bankruptcy under Chapter 7 of the Bankruptcy Code. As a result, this cause of action became the property of the Bankruptcy Trustee for Plaintiff's estate. See In re Ozark Restaurant Equipment Co., Inc., 816 F.2d 1222, 1225 (8th Cir. 1987); 11 U.S.C. §704.

K-5 seeks an Order allowing it to intervene in this action pursuant to Rule 24(a) of the Federal Rules of Civil Procedure. Rule 24(a) provides:

> Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

"Rule 24 is to be construed liberally, and doubts resolved in favor of the proposed intervenor." Turn Key Gaming, Inc. v. Ogala Sioux Tribe, 164 F.3d 1080, 1081 (8th Cir. 1999).

K-5's stated concerns are twofold: (1) that the Trustee for Plaintiff's estate will not do an adequate job of prosecuting this action, and (2) that any damages recovered will go into the general bankruptcy estate, rather than going entirely to K-5. Regarding the

latter concern, the ultimate allocation of funds recovered on Plaintiff's accounts receivable is an issue to be decided by the Bankruptcy Court in accordance with 11 U.S.C. §726. Were this Court to allow K-5 to intervene on that basis, we could be altering the process by which those allocations among creditors are made. It would not be appropriate for us to divest the Bankruptcy Court of its responsibility for distributing the property of Plaintiff's estate. Therefore, we limit our consideration to whether K-5's interest in Plaintiff's prosecution of this action warrants its intervention as of right.

Defendant does not dispute that K-5 has an interest in the property that is the subject of this suit. However, Defendant asserts that K-5 does not have standing to sue Defendant because Plaintiff's claims are solely the property of Plaintiff's bankruptcy estate, disposition of this case will not impair or impede K-5's interests, and K-5's interests are adequately represented by the Bankruptcy Trustee.

## I. RULE 24(a)

### A. Impairment of Interests

K-5 asserts that the disposition of this lawsuit will impair or impede its ability to protect its security interest in Plaintiff's accounts and inventory. K-5 argues that if it is not permitted to intervene, and Defendant prevails in this matter, K-5 will not be able to recover all of the money it is owed from Plaintiff. Defendant's response is that K-5 should not be permitted to intervene because what it "probably" wants to do is weigh in on litigation strategy.

This prong of the Rule 24(a) requirements is satisfied is where an unfavorable result in the instant action could prejudice the proposed intervenor in later

litigation. Turn Key Gaming, Inc. v. Oglala Sioux Tribe, 164 F.3d 1080, 1082 (8th Cir. 1999). See also Corby Recreation, Inc. v. General Elec. Co., 581 F.2d 175, 177 (8th Cir. 1978)(intervention appropriate where proposed intervenor "could well be disadvantaged in a practical sense by the stare decisis effect of a determination on the issues" of liability and damages in the instant action).

An unfavorable result for Plaintiff in this case would have an adverse practical effect on K-5. The amount that K-5 can recover on its security interest will be directly affected by the amount of any judgment against Defendant. K-5 will most likely be bound by any legal determinations made in this case regarding the contract between Plaintiff and Defendant, as well as any amounts owed under that contract. Cf. Brody v. Spang, 957 F.2d 1108, 1123 (3d Cir. 1992)(applicant need not prove that it would be barred from bringing a later action; policy of judicial economy favors intervention over later collateral attack). A failure of the Bankruptcy Trustee to pursue Plaintiff's claim in a satisfactory manner could "impair or impede" K-5's interest. Thus, unless that interest is adequately represented by existing parties, intervention is appropriate.

**B. Adequate Representation**

"The intervenor bears the burden of showing that [its] interests are not adequately represented by existing parties. . . . This burden is ordinarily minimal, . . . but if an existing party to the suit is charged with the responsibility of representing the interventor's interests, a presumption of adequate representation arises." Chiglo v. City of Preston, 104 F.3d 185, 188 (8th Cir. 1997)(citations omitted). We conclude that the Bankruptcy Trustee is charged with representing K-5's interests in this litigation, and that

the presumption that the Trustee will adequately represent the interest of all creditors, including K-5, has not been overcome.

K-5 and the Bankruptcy Trustee clearly share the common goal of maximizing the recovery of damages from Defendant. See In re Schwen's, Inc., 20 B.R. 638, 641 (D. Minn. 1982)(trustee has duty to protect and conserve property belonging to bankruptcy estate); 3 Norton Bankruptcy Law and Practice 2d §47:27 (it is well settled that a bankruptcy trustee is a fiduciary). K-5 argues that its interests are not adequately represented, however, because the Bankruptcy Trustee's goal (maximizing Plaintiff's estate) is inconsistent with K-5's goal (maximizing K-5's recovery). In essence, K-5's concern with respect to adequacy of representation appears to be about the allocation of any funds recovered in this action. As we have already stated, that issue is not appropriately before this Court.

K-5 has not substantiated its claim that the existing parties to this action will not adequately represent its interests. The Bankruptcy Trustee is charged with protecting the assets of Plaintiff's bankruptcy estate, a goal commensurate with K-5's interests. K-5 has not provided the Court with any evidence to suggest that the Bankruptcy Trustee plans not to pursue this case, or has failed to hire competent counsel to do so, nor otherwise provided a factual basis upon which this Court could conclude that K-5's interest will not be adequately represented by the Bankruptcy Trustee. We conclude that K-5 has not met the second requirement for intervention as of right pursuant to Rule 24(a).

## II. STANDING

Having determined that K-5 does not meet the standard for intervention pursuant to Rule 24(a), we need not address the issue of whether or not K- 5 has standing. However, the issue was raised by Defendant, and merits brief discussion.

"[T]he Constitution requires that prospective intervenors have Article III standing to litigate their claims in federal court." Planned Parenthood of Mid-Missouri and Eastern Kansas, Inc. v. Ehlmann, 137 F.3d 573, 577 (8th Cir. 1998)(citation omitted). Defendant argues that K-5 does not have standing to sue because, since Plaintiff filed for bankruptcy, only the Bankruptcy Trustee has authority to prosecute Plaintiff's claims. K-5 asserts that it has an independent right to sue Defendant as a result of written agreements between K-5 and Plaintiff.

Plaintiff entered into the Foothill Loan and Security Agreement (the "Foothill Agreement") with a company that subsequently assigned its rights under the agreement to K-5. Paragraph 4.1 of the Foothill Agreement explicitly grants a security interest in Plaintiff's present and future accounts and inventory. Paragraph 4.3 of the Foothill Agreement provides that K-5 (as Foothill's designee) has the power to collect Plaintiff's accounts directly and charge any collection costs and expenses to Plaintiff. These provisions appear to give K-5 an independent right to seek payment from Defendant on accounts due Plaintiff, and provide K-5 with standing to sue.

Defendant does not disagree that the Foothill Agreement, on its face, would seem to provide K-5 with standing. However, Defendant asserts that this independent right of action is, in Defendant's words, "trumped" by federal bankruptcy law. We disagree.

It is true that once a debtor has filed for bankruptcy, any causes of action the debtor might bring, or has already brought, become the property of the trustee of the estate. See In re Ozark Restaurant Equipment Co., Inc., 816 F.2d 1222, 1225 (8th Cir. 1987); Hunt v. Up North Plastics, Inc., 177 F.R.D. 449, 451 (D. Minn. 1997). However, where the obligations or liabilities run to the creditor personally, rather than to the debtor, such rights of actions do not fall within the assets of the bankruptcy estate. See Ozark Restaurant, 816 F.2d at 1224-25 (citing 11 U.S.C. §541(a)(1)(property of the estate comprises only legal and equitable interests of the debtor)). The Foothill Agreement establishes K-5's independent right to seek to recover directly Plaintiff's accounts receivable. The fact that the Bankruptcy Trustee is standing in Plaintiff's shoes does not deprive K-5 of standing to sue on its own behalf.

J.M.M.

**Please forward this announcement to the recipient of this fax.**

# The United States District Court, District of Minnesota announces two new programs!

**Expedited Trials** –The Court will begin offering parties an opportunity to participate in a program called Expedited Trials beginning July 2, 2001. This voluntary program offers an alternative to traditional case processing by allowing for a shorter time period from filing to disposition. Discovery and motion practice will be sharply limited as a means to reduce time and expense. Procedural rules are on the Court's website at www.mnd.uscourts.gov. If you would like additional information about the Expedited Trials Program, contact one of our clerk's offices at the phone numbers listed below.

**Courtroom Technology – Phase II** – In June 2001, the District of Minnesota began upgrading, installing, and enhancing the technology available to counsel in the courtroom. The project will continue through early fall and will ultimately upgrade all Article III Judge courtrooms in St. Paul and Minneapolis. To assist counsel with this transition, the District Court is offering a hands-on class, worth one hour of CLE credit at both courthouses. Classes will be held over the lunch hour. Course registration can be done by visiting www.mnd.uscourts.gov or by calling Kristine at 612-664-5125.

**For additional information on either program please visit our website at www.mnd.uscourts.gov.**

700 Federal Building
316 North Robert Street
St. Paul, MN 55101
(651) 848-1100

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5000

417 U. S. Courthouse
515 West First Street
Duluth, MN 55802
(218) 529-3500